UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br>  v.<br><br>GABRIEL MUTAMBO KALEMBO,<br><br>       Defendant. | CASE NO. 2:24-cr-00018-LK<br><br>ORDER DENYING DEFERRED PORTION OF SIXTH MOTION TO TRAVEL AND DIRECTING ISSUANCE OF SUMMONS |

  This matter comes before the Court on Probation's September 25, 2025 report to the Court alleging that Defendant Gabriel Mutambo Kalembo violated conditions of supervision, Dkt. No. 21, the parties' responses thereto, Dkt. Nos. 25, 27, and the parties' responses to the Court's request for supplemental briefing on Mr. Kalembo's motion to travel to Qatar from October 28, 2025 to November 27, 2025. Dkt. Nos. 22, 26, 28–30. For the following reasons, the Court denies the deferred portion of the motion to travel and directs that a summons be issued for Mr. Kalembo to appear at a supervised release violation hearing.

## I. BACKGROUND

In December 2017, Mr. Kalembo pleaded guilty to conspiracy to commit wire and bank fraud in violation of 18 U.S.C. §§ 1349, 1343, and 1344 in the United States District Court for the Northern District of Georgia. *USA v. Kalembo*, No. 1:17-cr-00110-TWT-AJB, Dkt. No. 50 (N.D. Ga. Dec. 19, 2017). He was sentenced to 21 months of imprisonment and two years of supervised release. *Id.* at 2–3. On or before July 7, 2020, while on supervision for that conviction, Mr. Kalembo committed additional fraud resulting in revocation of his term of supervised release and imprisonment for an additional seven months on that violation, *id.* Dkt. No. 84, as well as a separate conviction for money laundering conspiracy in violation of 18 U.S.C. § 1956(h). *USA v. Muraina et al.*, No. 1:20-cr-00284-WMR-RDC, Dkt. No. 86 (N.D. Ga. Sept. 20, 2021). For the latter offense, he was sentenced to 50 months in prison followed by three years of supervised release. *Id.* at 2–3. On January 30, 2024, supervision was transferred from the Northern District of Georgia to this District. Dkt. No. 1.

Mr. Kalembo "works with the Zambian U17 Men's Soccer Team," and on September 26, 2025, requested permission to travel to Zambia from October 5, 2025 to October 18, 2025 (for a training camp); to Spain from October 19, 2025 to October 27, 2025 (for another training camp); and to Qatar from October 28, 2025 to November 27, 2025 (for the World Cup). Dkt. No. 22 at 1. During this travel, Mr. Kalembo would "serve as the team manager as his team prepares for and competes in the FIFA U-17 Men's World Cup in Qatar." *Id.* at 2.

While under this Court's jurisdiction, Mr. Kalembo has requested to travel five separate times, Dkt Nos. 8, 10, 15, 17, 19, which the Court has substantially granted, Dkt. Nos. 9, 11, 16, 18, 20. On September 25, 2025, the Court received a Report from the United States Probation Office stating that "a routine check of Mr. Kalembo's credit" revealed that lines of credit had been opened in December 2023, June 2024, and October 2024 without permission from the Probation

1  Office. Dkt. No. 21 at 1. This included a credit card from Credit One Bank. *Id.* The next day, Mr.
2  Kalembo filed his sixth motion to travel. Dkt. No. 22.

3  On October 3, 2025, the Court denied Mr. Kalembo's requests to travel to Zambia and
4  Spain as untimely because he did not "allow the Court sufficient time to thoroughly consider the
5  request or allow Probation sufficient time to gather pertinent information regarding the alleged
6  [supervised release] violations." Dkt. No. 26 at 4–5. The Court deferred ruling on Mr. Kalembo's
7  request to travel to Qatar pending the Court's receipt and evaluation of information from Probation.
8  *Id.* at 5. Specifically, the Court directed Probation to gather information relating to "(1) Mr.
9  Kalembo's representation to his probation officer that prior probation officers gave him permission
10 to obtain the auto loans; Dkt. No. 21 at 1, (2) the circumstances surrounding the opening of the
11 Credit One account; (3) Mr. Kalembo's suggestion to his probation officer that a 'cyber incident'
12 resulted in the opening of the Credit One account, *id.*, and (4) the nature of the transactions on all
13 five accounts (i.e., whether there are any aberrant transactions or concerning account activity),"
14 and "provide the Court with any additional relevant information as well as [Probation's] position
15 on Mr. Kalembo's remaining travel request[.]" *Id.* The Court ordered both the Government and
16 Mr. Kalembo to respond to Probation's report. *Id.* at 5–6.

17 On October 6, 2025, Probation requested that Mr. Kalembo provide "a completed financial
18 long packet" and the following information by October 9, 2025:

19 - Auto loan permission: provide documentation confirming a prior officer
20   granted Mr. Kalembo authorization to obtain auto loans.

21 - Credit card dispute: provide a copy of any police report filed by Mr. Kalembo
    regarding alleged credit card fraud.

22 - Cyber incident claim: provide documentation or a police report verifying any
23   alleged fraud or unauthorized access to credit card accounts occurred.

24

- Financial statements: provide all credit card statements from August through September, as well as all bank statements reflecting Mr. Kalembo's expenditures.

Dkt. No. 28 at 1–2. According to Probation,

> On October 7, 2025, Mr. Kalembo submitted an updated financial packet through email; however, there appears to be discrepancy between this packet and the one he submitted in June 2025. For example, he indicated in June 2025 he did not have a bank account, but in the financial packet submitted on October 7, 2025, he reported possessing bank accounts at Wells Fargo and SoFi. Additionally, Mr. Kalembo failed to provide the requested information listed above.

*Id.* at 2. Probation advised the Court that it did not recommend that Mr. Kalembo be permitted to travel to Qatar based on "the lack of sufficient and relevant information regarding [his] financial accounts, and the discrepancy in the financial information provided this year." *Id.*

## II.   DISCUSSION

On October 16, 2025, the Government responded to Probation's report, stating that it opposed Mr. Kalembo's motion to travel because "[t]he available evidence suggests that he has violated conditions of supervised release by: (1) opening lines of credit without disclosing that information to his probation officer or seeking his probation officer's approval; (2) failing to make a full and complete disclosure of his finances to his probation officer; and (3) failing to answer truthfully the questions asked by his probation officer." Dkt. No. 29 at 3. For the same reasons, the United States continued to oppose Probation's recommendation in its September 2025 violation report that the Court take no action on the alleged violations. *Id.*; *see also* Dkt. No. 25.

On October 23, 2025, Mr. Kalembo filed a reply in support of his motion to travel. Dkt. No. 30. Mr. Kalembo asserts that "[n]either the Government nor Probation have suggested that Mr. Kalembo is suspected of any financial wrongdoing. Rather, there are questions about a credit card that was allegedly opened in October 2024 and two car loans, one from December 2023 and one from June 2024." *Id.* at 2. Concerning the car loans, he states as follows:

ORDER DENYING DEFERRED PORTION OF SIXTH MOTION TO TRAVEL AND DIRECTING ISSUANCE OF SUMMONS - 4

> [He] believes that he had permission from his prior probation officer to finance automobile purchases for himself and his wife. There is no documentation regarding the conversation that led to the confusion, but that does not make Mr. Kalembo so untrustworthy that he should not be allowed to travel for work.

*Id.* He adds that he "is uncertain about how the [Credit One] line of credit was opened and is working with his credit card company to resolve the issue." *Id.* Finally, he remarks that his "financial situation is tenuous"; he is "on the verge of being evicted," and his bank records show "extraordinarily limited resources." *Id.* at 3. Mr. Kalembo makes no effort to explain why he refused to turn over "all credit card statements from August through September, as well as all bank statements reflecting [his] expenditures," as requested by Probation. Dkt. No. 28 at 2. Attached to Mr. Kalembo's reply is (1) a letter from Credit One Bank acknowledging receipt on October 3, 2025 of a notification from Mr. Kalembo concerning "possible identity theft," Dkt. No. 30-1 at 2, and (2) a September 2025 Wells Fargo bank statement for Mr. Kalembo reflecting checking and savings accounts with a total collective balance of $3.62, Dkt. No. 30-2 at 2.

The Court has numerous concerns about the materials provided with Mr. Kalembo's reply. First, there is no indication that Mr. Kalembo previously provided this information to Probation such that it could be considered as part of Probation's recommendation to the Court. Moreover, the letter from Credit One Bank reflects that Mr. Kalembo first reported "possible identity theft" on October 3, 2025, Dkt. No. 30-1 at 2, the same day as the Court's prior order denying his requested travel, Dkt. No. 26, and roughly one week after the Court ordered him to reply to Probation's September 25, 2025 report, Dkt. No. 21 at 1. This is concerning given that Probation confronted Mr. Kalembo regarding the credit card account in June 2025. *Id.* At that time "Mr. Kalembo requested time to obtain documentation from Credit One Bank to prove the credit card was opened without his knowledge using his bank information," *id.*, but the only documentation he could provide to Probation (on September 21, 2025) was a letter from TransUnion Bank

indicating that "a cyber incident occurred involving a third-party application serving their United States consumer support operations," but explaining that "no credit information was accessed" in the incident. *Id.* Accordingly, Probation reported to the Court that there was not "sufficient evidence . . . to determine Mr. Kalembo did not obtain a credit card." *Id.* Probation also reported that the "credit card loan" was dated October 25, 2024. *Id.* The Court remains seriously concerned with Mr. Kalembo's honesty with Probation.

The Court's concerns are not assuaged by the submission of Mr. Kalembo's September 2025 bank statement. Dkt. No. 30-2. The statement reflects two Wells Fargo accounts—a checking account and a savings account—with a collective balance of $3.62. *Id.* at 2. Mr. Kalembo provided this record to support his assertion that his "financial situation is tenuous . . . and his bank records show extraordinarily limited resources," underscoring his need "to travel for work." Dkt. No. 30 at 3. But over the course of just this one month, $10,140 was deposited into his checking account, and $3,026.95 was deposited into his savings account—mostly from Square, GoFundMe, and Zelle deposits—while nearly equal amounts were taken out—mostly through Zelle transactions to another one or more of Mr. Kalembo's financial accounts. Dkt. No. 30-2 at 4–5, 7.[1] Notably, the savings account transactions consist almost entirely of deposits from GoFundMe of over $3,000, followed by same-day Zelle transfers to another of Mr. Kalembo's financial accounts in similar amounts. *Id.* at 7. The bank statement also reflects costly "[i]tems returned unpaid" exceeding $4,500. *Id.* at 5.

The nature and circumstances of Mr. Kalembo's prior offenses adds further cause for concern here. As discussed above, Mr. Kalembo was first convicted in 2017 of a "scheme to trick victims into wiring money from their own bank accounts into bank accounts controlled by [Mr.

---

[1] Mr. Kalembo's checking and savings accounts do not appear to have corresponding Zelle transfers, suggesting Mr. Kalembo has at least one other financial account that transfers and receives these Zelle transactions. *See id.*

ORDER DENYING DEFERRED PORTION OF SIXTH MOTION TO TRAVEL AND DIRECTING ISSUANCE OF SUMMONS - 6

Kalembo]." July 6, 2021 Presentence Investigation Report ("Presentence Report") at 24 (report revised July 26, 2021). While on supervised release for that conviction, he engaged in a money laundering conspiracy that involved the laundering of "fraudulently obtained proceeds" from false unemployment claims and tax returns that were filed using stolen personally identifiable information of others. *Id.* at 9.[2] Mr. Kalembo "worked with co-conspirators to set up financial accounts for the deposit of fraudulent proceeds and then depleted the accounts through money orders, electronic fund transfers and cash withdrawals." *Id.* "[T]o conceal the fraudulent nature, source and control of the proceeds," Mr. Kalembo and his co-conspirators set up numerous sham bank accounts "for the purpose of receiving funds acquired from criminal activity." *Id.* at 10. The scheme involved "conspirators quickly deplet[ing] the illegally obtained funds through interstate and foreign wire transfers to other bank accounts, cash or check withdrawals, debit card transactions and the purchase of money orders." *Id.* at 11. Mr. Kalembo used Zelle transactions in furtherance of the conspiracy. *Id.* at 12, 16–17. He also used a bank account he had originally created in connection with his soccer coaching business. *Id.* at 10, 13, 14, 16, 21. Given Mr. Kalembo's past mechanisms of fraud, his seemingly incomplete bank records reflecting numerous transfers of money in and out of accounts—including to and from other financial accounts of Mr. Kalembo that appear not to have been disclosed to Probation—are disconcerting, especially in the context of Mr. Kalembo having committed the present offense while on supervised release for another fraud offense. Dkt. No. 25 at 2; *see also* Presentence Report at 24.

Finally, Mr. Kalembo has a history of dishonesty. As part of his plea agreement in this case, Mr. Kalembo agreed to a two-level upward adjustment for obstructing or attempting to obstruct justice. Presentence Report at 7, 23; Dkt. No. 2-1 at 5–6. He admitted to instructing a co-

---

[2] Victims of the fraudulent unemployment applications included at least 11 Washington state residents. *Id.* at 13.

conspirator to tell investigators that certain laundered proceeds were "for the purchase of a car" to cover up the scheme. Presentence Report at 16–17, 23. These "laundered proceeds" included a $2,000 Zelle transfer to Mr. Kalembo. *Id.*

A district court has broad discretion to modify conditions of supervised release. *United States v. Miller*, 205 F.3d 1098, 1100 (9th Cir. 2000). After considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), the district court may modify the conditions of supervised release "at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]" 18 U.S.C. § 3583(e)(2). Thus, the only requirements for Section 3583(e)(2) modification are that the district court consider the listed Section 3553(a) factors, follow the procedure outlined in Federal Rule of Criminal Procedure 32.1(c), and ensure that the modified conditions are consistent with the general requirements set forth in Section 3583(d). *See United States v. Bainbridge*, 746 F.3d 943, 950 (9th Cir. 2014); *United States v. Tolliver*, No. CR20-0109-JLR, 2023 WL 3738052, at *1 n.2 (W.D. Wash. May 31, 2023).

Given the nature and circumstances of Mr. Kalembo's present offense and his history and characteristics, the Court has serious concerns about granting Mr. Kalembo's request. In particular, the Court is not inclined to essentially grant Mr. Kalembo a month-long break from supervision following his failure to meet his supervision requirements. Those considerations, as well as the need for adequate deterrence and to protect the public from further crimes of Mr. Kalembo, counsel against granting his motion. While Mr. Kalembo says that the requested travel would help him "to pay his rent, to pay other bills, [and] to support his family," Dkt. No. 30 at 2, he does not explain why he is in such dire financial straits given that in September alone, his bank account received

deposits of over $13,000, Dkt. No. 30-2 at 5, 7. Nor does he identify why his expenditures in September were roughly the same as the deposits. And as noted above, Mr. Kalembo makes no effort to explain why he refused to turn over the requested financial records to Probation, despite apparently having no problem obtaining a September bank account statement to submit with his reply brief. Dkt. No. 30-2. The Court will not grant the requested modification on the current record.

### III. CONCLUSION

Given the concerns described above, and the lack of "full and complete disclosure of . . . finances" to Probation as required under Mr. Kalembo's conditions of supervision, Dkt. No. 2-2 at 5, the Court DENIES Mr. Kalembo's motion to travel. The Court also directs Probation to gather account information (including statements detailing transactions) from all of Mr. Kalembo's financial accounts from August 2024 to present, *see* Dkt. No. 2-2 at 5, and to file a formal report and/or petition based on (1) any relevant information gleaned from those efforts and (2) the developments in this case between Probation's September 25, 2025 report, Dkt. No. 21, and the present. The Court also directs that a summons be issued to Mr. Kalembo to appear for a hearing on the alleged violations from Probation's September 25, 2025 report. *Id.* The Court will set a time and date for such hearing after corresponding with the parties to obtain their availability.

Dated this 25th day of October, 2025.

Lauren King
United States District Judge